[Cite as *In re J.Q.*, 2020-Ohio-4507.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

PREBLE COUNTY

| | | |
|---|---|---|
| IN RE: | : | |
| J.Q. | : | CASE NO. CA2020-02-003 |
| | : | O P I N I O N<br>9/21/2020 |
| | : | |

APPEAL FROM PREBLE COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. 20193109

A.Q., 218 N. Barron Street, Eaton, Ohio 43520, pro se

Martin P. Votel, Preble County Prosecuting Attorney, Kathryn M. West, 101 East Main Street, Courthouse, First Floor, Eaton, Ohio 45320, for appellee

**PIPER, J.**

{¶1}  Appellant, A.Q. ("Mother"), appeals a decision of the Preble County Court of Common Pleas, Juvenile Division, finding her child, J.Q., dependent and awarding temporary custody of J.Q. to the Preble County Job and Family Services, Children's Services Division ("the Agency").

{¶2}  J.Q. appeared before the Preble County Juvenile Court for a probation violation after failing to attend school.  The court placed J.Q. into the Agency's protective supervision.  The Agency then filed a complaint alleging that J.Q. was dependent.  Mother

denied the allegation of dependency, and the court scheduled an adjudication hearing. After the hearing, in which Mother participated, the court found J.Q. dependent and granted temporary custody of J.Q. to the Agency.

{¶3} Mother now appeals, pro se, the juvenile court's decisions, raising the following assignments of error.

{¶4} Assignment of Error No. 1:

{¶5} THE TRIAL COURT ERRORED BY GRANTING TEMPORARY CUSTODY TO AGENCY WITH NO PROOF OF REASONABLE EFFORTS MADE TO PROVE DEPENDENCY. [SIC].

{¶6} Mother argues in her first assignment of error that the court erred in granting temporary custody of J.Q. to the Agency based on a finding of dependency.

{¶7} The state bears the burden of proof of establishing that a child is abused, neglected, or dependent. *In re N.J.*, 12th Dist. Warren Nos. CA2016-10-086, CA2016-10-090, and CA2016-10-091, 2017-Ohio-7466, ¶ 12. A juvenile court's adjudication of a child as abused, neglected, or dependent must be supported by clear and convincing evidence. *In re T.B.*, 12th Dist. Fayette No. CA2014-09-019, 2015-Ohio-2580, ¶ 12.

{¶8} Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. *In re L.H.*, 12th Dist. Warren Nos. CA2018-09-106, and CA2018-09-109 thru CA2018-09-111, 2019-Ohio-2383, ¶ 20. An appellate court's review of a juvenile court's decision finding clear and convincing evidence is limited to whether there is sufficient, credible evidence in the record supporting the juvenile court's decision. *In re L.J.*, 12th Dist. Clermont No. CA2007-07-080, 2007-Ohio-5498, ¶ 12.

{¶9} The juvenile court determined that J.Q. was dependent pursuant to R.C. 2151.04(C), which defines a dependent child as one "whose condition or environment is

such as to warrant the state, in the interests of the child, in assuming the child's guardianship." The determination that a child is dependent requires no showing of fault on the parent's part. *In re A.P.*, 12th Dist. Butler No. CA2005-10-425, 2006-Ohio-2717, ¶ 27. Rather, the focus is solely on the child's condition or environment, and whether the child is without adequate care or support. *Id.* While the child's present condition or environment is the focus of a dependency determination, the law does not require the court to experiment with the child's welfare to see if the child will suffer great detriment or harm. *Id.*

{¶10} The record indicates that J.Q. had very poor attendance at school, failing grades in all but two classes, and was lacking necessary credits to advance to the next school level. An Agency intake worker testified that J.Q. had missed 48 days of school the prior year and had begun missing school again in the new year. Despite needing 18 credits to be a senior, J.Q. only had five and one-half in his third year. The intake worker also testified that there were allegations that the child was thin, and that Mother denied J.Q. food.

{¶11} J.Q.'s probation officer also testified and explained the physical safety concerns she had for the child. These concerns included Mother not permitting J.Q. to prepare food, J.Q. hiding food in the closet to eat later, and also J.Q. being out past court-ordered curfew with Mother's permission. The probation officer also testified that the child told her that Mother removed door handles to the kitchen to deny access and locks the child in the bedroom. The probation officer testified that J.Q. is "very thin" and reports eating only once a day. Mother has also refused mental health care to the child, including mental health evaluations that were recommended by the probation department.

{¶12} The child's high school principal also testified regarding J.Q.'s precarious situation as a high school junior, needing 24 credits to graduate but having only less than a third of that amount. J.Q. was also receiving six F's in the current school semester. The

principal also testified that when he spoke with J.Q. about contacting Mother specific to school-related issues, that J.Q would become fearful and worry about Mother becoming upset. For example, the principle related that Mother had become upset when J.Q. voluntarily participated in a mental health screening held at the school during which the child noted interest in receiving mental health assistance. Mother became upset that J.Q. participated in the screening, telling the principal that they had a family doctor J.Q. should see for health-related issues.

{¶13} Mother admitted during the adjudication hearing that she had difficulty getting J.Q. to school, which was an ongoing issue during J.Q.'s high school career. The juvenile court specifically relied upon the facts related to J.Q.'s schooling to adjudicate the child dependent, and those unrefuted facts demonstrated Mother had difficulty ensuring J.Q.'s attendance in school. Thus, the record indicates that the juvenile court's adjudication of the child as dependent was supported by clear and convincing evidence.

{¶14} Mother's first assignment of error is, therefore, overruled.[1]

{¶15} Assignment of Error No. 2:

{¶16} COURT ERRORED IN GRANTING A NINETY DAY EXTENSION OF TEMPORARY CUSTODY DUE TO INEFFECTIVE COUNSEL. [SIC].

{¶17} Mother argues in her second assignment of error that she was denied the effective assistance of counsel.

{¶18} In order to prove ineffective assistance of counsel, one must demonstrate that his or her counsel's performance was deficient and that such deficient performance prejudiced the defense so that the results of the hearing would have been different absent

---

1. Mother also claims she was never provided with a complaint and that the Agency asked for protective supervision, not temporary custody. However, the record indicates that Mother received the complaint, and that the Agency amended its complaint to include a request for temporary custody.

counsel's unprofessional errors. *In re P.G.*, 12th Dist. Warren Nos. CA2015-01-009, CA2015-01-010, 2016-Ohio-1433, ¶ 31.

{¶19} Mother argues that her counsel was ineffective for interjecting during the hearing that Mother was willing to admit that she had trouble getting J.Q. to go to school. During the hearing, Mother refused to admit J.Q.'s dependency. However, counsel indicated Mother's willingness to admit that she had difficulty getting the child to school. Yet, counsel made clear that Mother was not admitting to the other allegations such as denying the child food.

{¶20} There is no indication of deficient conduct on counsel's part, as Mother specifically admitted to having difficulty getting the child to school even after the juvenile court specifically told Mother that if she denied the allegations, a full hearing would progress. After the juvenile court asked if Mother was "admitting" that she could not get the child to attend school, Mother stated, "I was having difficulty yes. That's all I'm saying. It was hard to get him up and wanting to go. He did not want to be there."

{¶21} Mother did not admit all facts in dispute, and showed resistance to admitting any facts other than those related to school. After the juvenile court stated, "I mean if we need to have a hearing we can have a hearing," Mother stated, "no." She followed her statement denying the need for continuing the hearing by admitting that it was "difficult getting [J.Q.] to school. That was the only issue I was having. [The child] doesn't want to go. Doesn't want to be there. Doesn't like it."

{¶22} As noted earlier, the juvenile court based its finding of dependency upon the school-related issues which included Mother's admitted inability to ensure the child's attendance. Thus, Mother's counsel was not ineffective where Mother, herself, conceded her difficulty in having the child attend school. This is especially true where the juvenile court informed Mother that the hearing would progress if Mother disputed the school-related

facts and gave Mother multiple chances to explain the limitations of her admission. However, Mother chose to admit to the school-related facts and did not receive ineffective assistance of counsel before doing so.

{¶23} Mother's second assignment of error is overruled.

{¶24} Assignment of Error No. 3:

{¶25} COURT ERRORED IN NOT ENFORCING OR SUPERVISING A CASE PLAN. [SIC].

{¶26} Mother argues in her final assignment of error that the juvenile court erred by granting temporary custody of the child to the Agency without there being a case plan in place.

{¶27} According to R.C. 2151.412(D), "all parts of the case plan shall be completed by the earlier of thirty days after the adjudicatory hearing or the date of the dispositional hearing for the child."

{¶28} The record reflects that the Agency submitted its case plan to the juvenile court within the statutory period. The juvenile court issued an entry indicating Mother refused to sign the case plan generated by the Agency, and that the Agency had otherwise been unable to obtain signatures from the child's guardian ad litem and probation officer.

{¶29} To allow mother to voice her objections to the case plan, the juvenile court ordered a hearing. However, before the hearing occurred, Mother filed her notice of appeal with this court and filed an "answer" to the juvenile court's entry setting the hearing. Within the juvenile court filing, Mother stated her belief that she was "not required to appear" at the hearing and was relying upon this court's review of her appeal rather than participate in the case plan hearing. Of her own volition, rather than any error of the Agency or juvenile court, Mother expressed her refusal to participate and filed a notice of appeal, thus divesting the juvenile court of jurisdiction.

**{¶30}** Once the issue was appealed, the juvenile court lacked jurisdiction to rule on the matter further.  As such, Mother's final assignment of error is overruled.[2]

**{¶31}** Judgment affirmed.

M. POWELL, P.J., and S. POWELL, J., concur.

---

2. The juvenile court will regain jurisdiction over this matter upon the disposition of this appeal and can rule accordingly on the case plan issue.